**No. 25-50719**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**MARIA TIJERINA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF NEIDA TIJERINA, DECEASED, AS NEXT FRIEND J.P., R.D., A.R., AND E.S.,**
*Plaintiff – Appellant,*

V.

**CITY OF SAN ANTONIO; JOHNNY J. AGUIRRE; JOSE CLAIRE; NICHOLAS RODGERS,**
*Defendants – Appellees.*

Appealed from the U.S. District Court, Western Dist. of Texas

**OPENING BRIEF OF APPELLANT**

*Appeal of the August 8, 2025 Amended Summary Judgment Order in the U.S. District Court, Western District. of Texas, San Antonio Div. Civil Action No. 5:23-CV-00916, Hon. David Alan Ezra, Presiding*

**PATRICK BALLANTYNE**
Texas Bar No. 24053759
**LaHood Norton Law Group**
16500 San Pedro Ave., Ste. 300
San Antonio, Texas 78232
210·797·7700
patrick@lahoodnorton.com

**COUNSEL FOR APPELLANT**

# CERTIFICATE OF INTERESTED PERSONS

No. 25-50719

_____

MARIA TIJERINA, ET AL.
*Plaintiff – Appellant,*

v.

CITY OF SAN ANTONIO, ET AL.
*Defendants – Appellees.*

_____

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and/or entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| DISTRICT COURT JUDGE |
|---|
| **HON. DISTRICT COURT JUDGE DAVID ALAN EZRA**<br>Western District of Texas<br>San Antonio Division |

| APPELLANT/PLAINTIFF BELOW |
|---|
| Maria Tijerina, Individually, and as Representative of the Estate of Neida Tijerina, Deceased, and as Next of Friend for J.P., R.D., A.R. And E.S. |

| TRIAL COUNSEL FOR APPELLANT |
|---|
| **DESI I. MARTINEZ**<br>Texas Bar No. 24053342<br>desi.martinez@martinez-law.com<br>**MARK ANTHONY ACUNA**<br>Federal Bar No. 997078<br>mark.acuna@martinez-law.com |

MARTINEZ &ASSOCIATES, PLLC
2828 Goliad Road, Suite 125
San Antonio, Texas 78223
210·359·8250

**PATRICK BALLANTYNE**
Texas Bar No. 24053759
LaHood Norton Law Group
16500 San Pedro Ave., Suite 300
San Antonio, Texas 78232
210·797·7700
patrick@lahoodnorton.com

| APPELLATE COUNSEL FOR APPELLANT |
|---|

**PATRICK BALLANTYNE**
Texas Bar No. 24053759
LaHood Norton Law Group
16500 San Pedro Ave., Suite 300
San Antonio, Texas 78232
210·797·7700
patrick@lahoodnorton.com

| APPELLEE-OFFICERS/DEFENDANT-OFFICERS BELOW |
|---|

**JOHN AGUIRRE**
**NICHOLAS RODGERS**
**JOSE CLAIRE**

| TRIAL COUNSEL FOR APPELLEE-OFFICERS |
|---|

**MARK KOSANOVICH**
Texas Bar No. 00788754
P.O. Box 831121
San Antonio, Texas 78283
mk@fitxkoslaw.com

| APPELLATE COUNSEL FOR APPELLEE-OFFICERS |
|---|

**MARK KOSANOVICH**
Texas Bar No. 00788754
P.O. Box 831121
San Antonio, Texas 78283

| mk@fitxkoslaw.com |
| --- |

| **APPELLEE CITY OF SAN ANTONIO/DEFENDANT BELOW** |
| --- |
| **CITY OF SAN ANTONIO** |

| **TRIAL COUNSEL FOR APPELLEE CITY OF SAN ANTONIO** |
| --- |
| **CASSANDRA CORREA**<br>Assistant San Antonio City Attorney<br>P.O. Box 839966<br>San Antonio, Texas 78283<br>cassandra.correa@sanantonio.gov |

| **APPELLATE COUNSEL FOR APPELLEE CITY OF SAN ANTONIO** |
| --- |
| **JACQUELINE M. STROH**<br>Texas Bar No. 00791747<br>1020 NE Loop 410 Ste 270<br>San Antonio, TX 78209-1221<br>jackie@strohappellate.com |

_/s/ Patrick Ballantyne_
Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests that the Court hear oral argument in this cause. This case presents an unresolved question in the Fifth Circuit concerning whether an innocent hostage is "seized" by law enforcement for the purposes of the Fourth Amendment when she is inadvertently shot and killed by police. *See Estate of Parker*, 140 F.4th 226, 238-239 (5th Cir. 2025). Appellant submits that the Court's decisional process would benefit from oral argument concerning this unresolved question and the other issues presented by this case.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................................2

STATEMENT REGARDING ORAL ARGUMENT ......................................................5

TABLE OF CONTENTS ...............................................................................................6

TABLE OF AUTHORITIES...........................................................................................8

JURISDICTIONAL STATEMENT ..............................................................................10

STATEMENT OF THE CASE .....................................................................................11

STATEMENT OF THE ISSUES ..................................................................................12

STATEMENT OF THE FACTS....................................................................................13

    1. The hostage-standoff and death of Neida Tijerina ............................................13

    2. Relevant Procedural History ...............................................................................15

SUMMARY OF THE ARGUMENT.............................................................................16

ARGUMENT AND AUTHORITIES ...........................................................................18

  STANDARD OF REVIEW .........................................................................................18

  APPELLANT'S FIRST POINT OF ERROR: ...........................................................19

    1. Nedia Tijerina and her children were "seized" by willful police action within the meaning of the Fourth Amendment. ...............................................................19

    2. Appellee-Officer Aguirre applied excessive and objectively unreasonable force..................................................................................................23

      A. The excessive force standard ..........................................................................24

      B. There is a genuine issue of material fact concerning whether Officer Aguirre exercised excessive and unreasonable force ...............................24

  APPELLANT'S SECOND POINT OF ERROR:........................................................28

1.   The qualified immunity standard in a summary judgment analysis .................28

2.   Clearly established case law ............................................................29

3.   Statutory law of which Officer Aguirre was actually aware ..........................30

APPELLANT'S THIRD POINT OF ERROR: ......................................................31

APPELLANT'S FOURTH POINT OF ERROR: ....................................................32

CONCLUSION & PRAYER ............................................................................33

CERTIFICATE OF SERVICE..........................................................................34

CERTIFICATE OF COMPLIANCE ...................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................18

*Blow v. City of San Antonio, Tex.*, 236 F.3d 293 296 (5th Cir. 2001) .........................18, 26

*Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023) ...........................................................24

*Brower v. Cty. of Inyo*, 489 U.S. 593 (1989) ................................................................20

*Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986)......................................................22, 32

*Estate of Parker*, 140 F.4th 226 (5th Cir. 2025) .........................................................20, 21

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ......................................20, 21, 24

*Garner v. Tennessee,* 471 U.S. 1 (1985)..........................................................................29

*Graham v. Connor*, 490 U.S. 386 (1989)......................................................................24,25

*Grandstaff v. Boger*, 767 F.2d 161 (5th Cir. 1985)..........................................................29

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .....................................................................28

*Ibarra v. UPS*, 695 F.3d 354 (5th Cir. 2012) ..................................................................18

*Lytle v. Bexar Cnty Tex.* 560 F.3d 404 (5th Cir. 2009 .............................................27, 28, 30

*Roe v. Johnson Cty.*, No. 21-10890 (5th Cir. 2023)...........................................................29

*Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021) ...............................................................29

*Shumpert v City of Tupelo*, 905 F3d 310 (5th Cir 2018) ..................................................25

*Singleton v. Casanova*, No. 22-50327 (5th Cir. 2024).......................................................21

*Terry v. Ohio*, 392 U.S. 1 (1968) ...................................................................................20

*Tolan v. Cotton*, 572 U.S. 650 (2014)..............................................................................29

**Statutes**

28 U.S.C. § 1291 .............................................................................................................10

28 U.S.C. § 1331 .............................................................................................................10

28 U.S.C. § 1343 .............................................................................................................10

28 U.S.C. § 1367 .............................................................................................................10

28 U.S.C. § 1983 .........................................................................................................15, 20

Tex. Penal Code § 9.05 ................................................................16, 30

**Constitutional Provisions**

Fourth Amendment .........................................................20, 21, 22, 23, 24, 28

## JURISDICTIONAL STATEMENT

### 1. Jurisdiction of the District Court

Jurisdiction was proper in the district court, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). The district court also had supplemental jurisdiction to hear Appellant's state law claims pursuant to 28 U.S.C. § 1367.

### 2. Basis for Jurisdiction in the Court of Appeals

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 (final decisions of district courts).

### 3. Timeliness of Appeal

The district court's Amended Summary Judgment Order was entered on August 8, 2025. (ROA.1756) Appellant timely filed his Notice of Appeal on August 29, 2025. (ROA.1791)

### 4. Summary Judgment

This appeal arises from the district court's summary judgment disposing of all claims asserted by all parties. (ROA.1790).

## STATEMENT OF THE CASE

*Nature of the Case*:    Appellant filed suit against three individual San Antonio Police Officers and the City of San Antonio alleging civil rights and state wrongful death causes of action arising from Neida Tijerina's death after being shot by a San Antonio Police Officer during a hostage standoff. (ROA.101).

*Trial Court*:    United States District Court for the Western District of Texas, San Antonio Division. Hon. Judge Hon. David Alan Ezra Presiding.

*Course of Proceedings*:    The Defendant Officers and the City moved for summary judgment. (ROA.617, 1182)

*Trial Court's Disposition*:    The district court granted summary judgment in favor of all Appellees and declined to exercise supplemental jurisdiction over Appellant's state law causes of action, which disposed entirely of Appellant's existing claims. (ROA.1756).

*Notice of Appeal*:    Appellant timely filed her notice of appeal of the district court's summary judgment rulings. (ROA.1791)

## STATEMENT OF THE ISSUES

**APPELLANT'S FIRST POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina.

**APPELLANT'S SECOND POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre was entitled to qualified immunity.

**APPELLANT's THIRD POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree on Appellant's bystander-injury claims by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina.

**APPELLANT'S FOURTH POINT OF ERROR:**

The district court erred in granting summary judgment for the City of San Antonio by improperly holding that Appellee-Officer John Aguiree did not exercise excessive force when he shot and killed Neida Tijerina.

12

## STATEMENT OF THE FACTS

Neida Tijerina was a mother and hostage killed by a bullet fired from the rifle of a San Antonio police officer. This tragedy concluded a police standoff after Neida's former boyfriend, Angel Sanchez, took Neida and three of her children hostage in her apartment. The facts of Neida's death and the events leading up to it are as follows.

### 1. The hostage-standoff and death of Neida Tijerina

On July 25, 2021, at approximately 11:00 a.m., Angel Sanchez arrived at Neida Tijerina's San Antonio apartment with a shotgun. Three of Neida's four children were present at the apartment at the time. (ROA.1653-Ex 1) Sanchez was angry about Neida being in a relationship with another man, and he began striking her while refusing to let anyone leave the apartment. *Id*. The following day, Ms. Tijerina was eventually able to contact her cousin who then called 911. Officers from the San Antonio Police Department were dispatched and arrived on scene at approximately 10:00 p.m. *Id*. After assessing the situation, the officers took cover and called for support. A standoff lasting some two-and-one-half hours ensued.

Three of the San Antonio Police Officers who arrived on scene were John Aguirre, Jose Claie, and Nathan Rodgers (the "Defendant-Officers" or "Appellee-Officers"). Each of these officers was equipped with a patrol rifle which was provided or approved for carry by the San Antonio Police Department. (ROA.1653-Ex. 7 at 22-23; Ex. 8 at 2; Ex. 9 at 25-26; Ex. 10 at 1; Ex. 11 at 24) These patrol rifles are AR-15 pattern, semiautomatic firearms

13

that fire high-velocity rounds. (ROA.1653-Ex. 4 at 26; Ex. 11 at 24; Ex. 14 at 46) The Appellee-Officers took elevated positions on the roof of a "rec center" giving them a better line of fire toward the front door of the apartment which was approximately 35-40 yards from their position. (ROA.1653-Ex. 5 at 17; Ex. 7 at 67-68) The apartment was on the second floor of the building with a staircase leading to the front door. (ROA.1653-Ex. 19)

During the course of the standoff, the Appellee-Officers became aware that hostages including Neida were inside the apartment. Both Angel Sanchez and Neida Tijerina emerged and reentered the apartment multiple times. (ROA.1653-Ex. 9 at 40-41) The Appellee-Officers were informed over their radios that children were inside the apartment. (ROA.1653-Ex. 9 at 42) Once, Sanchez emerged holding Neida's infant son. (ROA.1653-Ex. 7 at 77-78) On the final occasion that Sanchez exited the apartment door, the Appellee-Officers believed he pointed his shotgun in the direction of other police officers stationed on the ground. (ROA.1653-Ex. 7 at 79; Ex. 8 at 3; Ex. 9 at 43; Ex. 11 at 42; Ex. 12 at 2) In response, the Appellee-Officers opened fire, sending a volley of a dozen rounds, fired in less than two seconds, into Sanchez and the hostage-occupied apartment behind him. (ROA.1653-Ex. 4 at 25-26) One of these rounds struck and killed Neida who was standing in the doorway of the partially opened door behind Sanchez. (ROA.1653-Ex. 4 at 17-21)

Police investigation would later determine that Officer Claire fired once, Officer Rodgers fired twice, and Officer Aguirre fired **nine times** in approximately two seconds. (ROA.1653-Ex. 4 at 24; Ex. 13 at 31-32) A bullet was recovered near Neida's body, and ballistic analysis later identified that bullet as one of the nine rapidly fired from Officer

14

Aguirre's rifle.  (ROA.1653-Ex. 4 at 23)

## 2.  Relevant Procedural History

Appellant filed a suit for damages, pursuant to 28 U.S.C. § 1983, against the City of San Antonio and the Appellee-Officers, alleging that these defendants deprived Neida Tijerina of her rights as secured by the U.S. Constitution's Fourth and Fourteenth Amendments when the Appellee-Officers shot and killed Ms. Tijerina, an innocent bystander, during the hostage-standoff described above.  (ROA.101)  Appellant, who is Neida's mother, brought suit individually and on behalf of Neida's estate and as next friend of Neida's minor children.  (ROA.36)

Both the City and the Appellee-Officers moved for summary judgment. (ROA.617, 1182)  Appellant responded to each motion (ROA.1612, 1653), and the Appellee parties filed their respective replies. (ROA.1647, 1694)  On August 8, 2025, the district court issued a written amended order granting summary judgment as to all of Appellant's existing federal law claims and declining to exercise jurisdiction over Appellant's state law claims.  (ROA.1756)  Appellant then timely filed her notice of appeal. (ROA.1791)

## SUMMARY OF THE ARGUMENT

**APPELLANT'S FIRST POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina. Neida and her children were seized within the interpreted meaning of the Fourth Amendment. There is a genuine issue of material fact concerning whether Aguirre committed a constitutional violation by exercising excessive force when he rapidly sprayed a volley of nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds in the line of fire of an apartment wherein he knew hostages to be present and killed Neida.

**APPELLANT'S SECOND POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre was entitled to qualified immunity. Clearly established case law hold that constitutional rights are violated when "officers in *conscious disregard* of substantial risk of harm to innocent parties, kill an innocent third party." *Grandstaff v. Boger*, 767 F.2d 161 (5th Cir. 1985). Texas Peanl Code § 9.05 denies defensive justifications (such as self-defense and defense of others) to actors (including law enforcement officers) who recklessly kill or injure innocent persons. Officer Aguirre testified that he was actually aware of this statute prior to his recklessly killing Neida Tijerina.

**APPELLANT'S THIRD POINT OF ERROR:**

The district court erred in granting summary judgment for Appellee-Officer John Aguiree on Appellant's bystander-injury claims by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina. The district court's ruling on this issue turned on its previous conclusion that the Appellee-Officers did not exercise

16

excessive force resulting in a constitutional violation. As briefed under Appellant's first point of error, Officer Aguirre did commit a constitutional violation. Accordingly, summary judgment on these claims was improper.

### APPELLANT'S FOURTH POINT OF ERROR:

The district court erred in granting summary judgment for the City of San Antonio by improperly holding that Appellee-Officer John Aguiree did not exercise excessive force when he shot and killed Neida Tijerina. The district court's ruling on this issue turned on its previous conclusion that the Appellee-Officers did not exercise excessive force resulting in a constitutional violation. As briefed under Appellant's first point of error, Officer Aguirre did commit a constitutional violation. Accordingly, summary judgment on these claims was improper.

## ARGUMENT AND AUTHORITIES

### STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Ibarra v. UPS*, 695 F.3d 354, 355 (5th Cir. 2012). It therefore owes no deference to the district court's decision. *See id.*

Summary judgment is appropriate only where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is improperly rendered if the nonmovant presents anything more than a scintilla of evidence raising a genuine issue of material fact. *See, e.g.*, *Higginbotham Bros. & Co., LLC v. Do It Best Corp.*, No. 11-CV-149, 2012 WL 13029379, at *2 (W.D. Tex. 2012). More than a scintilla exists when the evidence is such that reasonable and fair-minded people could differ in their conclusions. *See id.*

For the *de novo* review, the Court examines the record as a whole, viewing the evidence, including all facts and inferences, in the light most favorable to the nonmovant, and resolving all doubts in the nonmovant's favor. *See, e.g., Blow v. City of San Antonio, Tex.*, 236 F.3d 293 296 (5th Cir. 2001). The bottom line is that summary judgment is appropriate only if no reasonable factfinder could find for the nonmovant. *See Anderson*, 477 U.S. at 248.

**APPELLANT'S FIRST POINT OF ERROR:**

**The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina.**

The district court granted summary judgment in favor of the Appellee-Officers holding that they did not violate the U.S. Constitution's Fourth Amendment right to be free from the excessive application of force. As an initial matter, Appellant here concedes that Appellee-Officers Claire and Rodgers did not exercise excessive or disproportionate force when they fired one and two shots respectively in response to the perceived threat presented by Angel Sanchez. However, this restrained application of force stands in stark contrast to Appellee-Officer Aguirre rapidly spraying a volley of nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds in the line of fire of an apartment wherein he knew hostages to be present. Appellant therefore maintains and contends, for the reasons discussed below, that Officer Aguirre committed a constitutional violation by exercising unreasonably excessive force which directly resulted in the death of Neida Tijerina.

1. **Nedia Tijerina and her children were "seized" by willful police action within the meaning of the Fourth Amendment.**

In its order granting summary judgment, the district court first considered the question of whether Neida Tijerina and her children were "seized" for the purposes of Appellant's Fourth Amendment claims against the Appellee-Officers. (ROA.1764)

19

Although the district court opined that there was not sufficient evidence of a seizure under the facts of this case, the court also "acknowledge[d] the unresolved question in this Circuit as stated above as to whether '§ 1983 claims asserted against law enforcement officers for unintended injuries suffered by innocent hostages lack the willful detention required to establish a Fourth Amendment seizure.'" (ROA.1768); *quoting Estate of Parker*, 140 F.4th 226, 238-239 (5th Cir. 2025). The district court then assumed without deciding that a seizure occurred and proceeded to examine the question of reasonable force. (ROA.1769)

Although the district court's summary judgment decision did not turn on the issue of seizure, Appellant contends that Neida Tijerina and her children were in fact "seized" by police action as that term is understood and applied in the context of section 1983 Fourth Amendment claims. By this standard, an officer seizes a person when he, "by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004); *quoting Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). For Fourth Amendment purposes, a "seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (internal citations omitted). The detention must be "willful" as opposed to unknowingly effected. *Id*.

As mentioned above, this Circuit recently observed that "Neither our circuit nor others have definitively resolved whether a seizure occurs when law enforcement intentionally targets a suspect but unintentionally strikes an innocent hostage." *Estate of*

*Parker*, 140 F.4th 226, 238-239 (5th Cir. 2025)[1] (footnotes omitted).  However, previous decisions by this Court have defined circumstances whereby a willful police act (e.g. intentionally firing a weapon) with an unintended result (e.g. killing an innocent hostage) can be considered a Fourth Amendment seizure.  *See Singleton v. Casanova*, No. 22-50327, 2024 U.S. App. LEXIS 14073, 2024 WL 2891900 (5th Cir. 2024) (unpublished).

In S*ingleton*, the defendant was a San Antonio police officer who exercised deadly force by firing his handgun into a residence at an individual he believed presented a threat. *Id*. at *2-9.  One of the officer's rounds struck and killed another young man sitting on a chair in the room.  *Id.* at 8.  In considering the issue of seizure, this Court observed the common Fourth Amendment standard which considers whether a reasonable person would believe that he was free to leave the officer's presence, but the Court also noted that "courts 'do not consider the suspect's perception of her detention [, however,] when it is accomplished by physical force.'"  *Id*. at *11; quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (holding plaintiff was seized when an officer shot at her vehicle). The *Singleton* court then distinguished between willful means of seizure (such as intentionally firing a weapon) from unintentional applications of force (such as an officer accidently discharging his weapon).  *Id*. at *11-12.  Applying this standard, this Court held that there was a genuine issue of material fact concerning whether the plaintiffs were seized by the officer's willful act of firing his weapon when he knew others to be present in the

---

[1] Like the district court below, the *Parker* court's decision discussed but did not decide the issue of whether the innocent hostage was "seized" by law enforcement when he was inadvertently shot and killed by police. *Estate of Parker*, 140 F.4th at 239.

room. *Id*. at 41-43.

In reaching that result, the *Singleton* court cited this Court's decision in *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). In *Coon*, the defendant officer fired into a trailer home knowing that Coon's four-year old daughter was inside. *Id*. 1159-61. Although the child in *Coon* was not the officer's intended target, this Court decided the child proved a valid constitutional claim. *Id*. at 1161. Relying on the limited guidance from this Court, it can be gleaned that an officer who intentionally targets a suspect but inadvertently strikes an innocent hostage may be held to have "seized" that hostage where the officer knows the hostage is potentially in his line of fire. In such circumstances, a willful seizure of the hostage has been accomplished by the application of force in the direction of the hostage by an officer conscious of the hostage's presence. Appellant submits that this is the workable standard that should apply in such cases. Whether or not the officer's exercise and application of force was reasonable is a separate question.

In this case, there is no dispute that the Appellee-Officers intentionally fired their rifles. (ROA.1653-Ex. 8 at 3; Ex. 10 at 2; Ex. 12 at 2) Although the Appellee-Officer Aguirre may not have intended to shoot Neida Tijerina or any other hostages, he directed his rapid fire towards the partially opened door of the apartment wherein he knew hostages to be present. The officers all understood this to be a hostage-standoff situation before any shots were fired. (ROA.1653-Ex. 8; Ex. 10; Ex, 12)[2] Officer Aguirre testified that he was

---

[2] The defense's own use of force expert, Alberto Rodriguez, reports that it is "undisputed" that, when the Defendant-Officers discharged their firearms, they were aware Mr. Sanchez "was holding Neida and three children (including one infant) against their will" in the

aware that there was at least one adult female and multiple children being held hostage in the apartment before he fired nine rounds at Sanchez in under two seconds while Sanchez was standing in front of the apartment door. (ROA.1653-Ex. 7 at 66, 77) He witnessed Neida exit the apartment, descend the stairs, and return up at least twice prior to firing. (ROA.1653-Ex. 7 at 68-69, 75-77) He also witnessed Angel Sanchez exit the apartment while holding a small child. (ROA.1653-Ex 7 at 77-78) (ROA.1653-Ex 7 at 66-69, 77-78)

The evidence produced therefore shows that Officer Aguirre took intentional action (firing his rifle) directed toward the apartment where he knew Neida and the children to be present. Accordingly, there exists a genuine issue of material fact concerning whether Officer Aguirre's actions were "directed toward" Neida and the other hostages therefore seizing them within the interpreted meaning of the Fourth Amendment.

**2. Appellee-Officer Aguirre applied excessive and objectively unreasonable force**

The district court's summary judgment decision turned mainly on its finding that the Appellee-Officers did not exercise objectively unreasonable force when they fired their rifles at Angel Sanchez and inadvertently killed Neida Tijerina. (ROA.1769) In holding so, the district court's analysis largely focused on whether the Appellee-Officers' decision to exercise deadly force was objectively reasonable given the circumstances known to them. (ROA.1770-72) Appellant does not here dispute that the Appellee-Officers' decision

---

apartment. (ROA.617-Ex. 2 at 26)

to exercise deadly force was objectively reasonable in the moment they perceived Angel Sanchez present a threat of deadly force to other officers. Rather, Appellant's contention is that there exists a genuine issue of material fact concerning whether Officer Jose Aguirre's application of deadly force was excessive in light of circumstances known to him at the time force was used.

## A. *The excessive force standard*

The standard for excessive force is the same under both the Fourteenth and the Fourth Amendments: "whether the force was objectively unreasonable in light of the facts and circumstances of each particular case." *Boyd v. McNamara*, 74 F.4th 662, 667 n.3 (5th Cir. 2023). To prevail on an excessive force claim, a plaintiff must show "that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). This inquiry is an objective one, and an "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

## B. *There is a genuine issue of material fact concerning whether Officer Aguirre exercised excessive and unreasonable force*

In adjudging the decisions of officers exercising force, the *Graham* standard directs courts to adopt "the perspective of a reasonable officer on the scene, rather than judge with

24

the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This case presents a very rare circumstance where there actually were two reasonable officers on the scene—both with the same perspective and subjective knowledge as Officer Aguirre—who both exercised deadly force in response to the same perceived threat as did Officer Aguirre. But, where Officers Claire and Rodgers fired a controlled one and two shots respectively, Office Aguirre poured nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds, killing Neida Tijerina. The disparity between the application of force by two other reasonable officers in the same position as Officer Aguirre must be considered in the objective analysis and gives rise to a genuine issue of material fact concerning whether Aguirre's application of force was unreasonable and excessive to the need.

The district court relied on cases holding that an officer's application of force will not be considered excessive so long as the suspect is not subdued. (ROA.1774) But none of these cases involved anything like the factual circumstances of this case. This case does not arise from a suspect alleging officers exercised undue force after he was already subdued or demonstrating compliance. *See e.g. Shumpert v City of Tupelo*, 905 F3d 310, 323 (5th Cir 2018). Rather, this case poses the question of whether an officer who is justified in exercising deadly force in response to a threat applies excessive and unreasonable force when he rapidly fires nine shots of high velocity, barrier penetrating rifle founds in less than two seconds, knowing that hostages are within his line of fire, and kills one of those hostages.

The district court's analysis also relies repeatedly on evidence that the officers were informed that the hostages were in a room in the rear of the apartment. (ROA.1768) However, this evidence of the officers' knowledge is contradicted or at least called into question by other evidence, including Officer Aguirre's own testimony, that showed Neida emerged and reentered the apartment multiple times leading up to the fatal shots. (ROA.1653-Ex 7 at 66-69, 77-78; Ex. 9 at 40-41)  By disregarding this evidence in its summary judgment analysis, the district court improperly assumed primacy of the movant's evidence and failed to view the evidence in the light most favorable to the non-movant while resolving any contradictions in favor of the non-movant. *See Blow v. City of San Antonio, Tex.*, 236 F.3d 293 296 (5th Cir. 2001).

As stated above, Appellant concedes that Officers Rodgers and Claire did not exercise excessive or disproportionate force. In response to the threat to other officers, Officer Claire fired one shot at Angel Sanchez and Rodgers fired twice from their respective patrol rifles to neutralize the threat. (ROA.1653-Ex. 4 at 24; Ex. 13 at 31-32) This restrained application of force stands in stark contrast to Officer Aguirre rapidly spraying a volley of nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds in the line of fire of an apartment wherein he knew hostages to be present. *Id.* The district court was presented with expert evidence that an AR-15 pattern rifle cannot be fired at that rate while maintaining accuracy on target. (ROA.1653-Ex. 6 at 95-96, 100) The evidence shows that the only bullet recovered near Neida Tijerina's dead body was one of the nine fired from Officer Aguirre's weapon. (ROA.1653-Ex. 4 at 23)  The

reasonable inference to be drawn from these facts is that Officer Aguirre's rapid fire of nine high-velocity rifle projectiles exceeded his ability to place accurate shots, resulting in the errant shot that killed Neida.

As an example in extremis, an officer in Aguirre's position who fired a rocket propelled grenade at Angel Sanchez after perceiving him to threaten other officers, might be justified in his decision to exercise deadly force but his application of such force would be clearly excessive and unreasonable, especially where the officer knows there to be innocents in the apartment behind Sanchez. Between this extreme example and the reasonable application of force by Officers Claire and Rodgers (firing one and two shots respectively), where is the demarcating line of unreasonable application of force under these circumstances? And did Officer Aguirre cross that line when he fired a rapid volley nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds from his AR-15 patterned patrol rifle knowing that hostages were present and moving in the apartment behind his target?

Whether Officer Aguirre's application of force will ultimately be considered excessive and unreasonable is a factual issue for the jury to decide.[3] At the summary judgment stage of these proceedings, Appellant presented the district court with sufficient

---

[3] "Moreover, the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury. This is not only because the jury must resolve disputed fact issues but also because the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness. *Lytle v. Bexar Cty. Tex.*, 560 F.3d 404, 411 (5th Cir. 2009)

evidence to raise at least the genuine issue of material fact concerning whether Officer Aguirre violated Neida's constitutional right to be free from his excessive application of force. Accordingly, the district court improperly ruled that no evidence supported the existence of a constitutional violation, and summary judgment on this point must be reversed as to Appellee-Officer Aguirre.

**APPELLANT'S SECOND POINT OF ERROR:**

**The district court erred in granting summary judgment for Appellee-Officer John Aguiree by improperly holding that Aguirre was entitled to qualified immunity.**

After ruling in the negative on the issue of a whether the Appellee-Officers committed a constitutional violation when Officer Aguirre shot and killed Neida Tijerina, the district court then addressed the question of qualified immunity. (ROA.1777) The court below concluded that, "Even if [Appellant] could demonstrate a constitutional violation, the Individual Officers would be entitled to qualified immunity because the unlawfulness of their conduct was not clearly established at the time." (ROA.1777)

**1. The qualified immunity standard in a summary judgment analysis**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lytle v. Bexar Cty. Tex.*, 560 F.3d 404, 409 (5th Cir. 2009); *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

To meet the burden to overcome qualified immunity, a plaintiff "must identify a case

**or statute** making sufficiently clear that every reasonable officer would have understood that what [the officer] did violated that law." *Roe v. Johnson Cty.*, No. 21-10890, 2023 U.S. App. LEXIS 254, at *5 (5th Cir. 2023) (emphasis added); *citing Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020).

"Although the plaintiff need not identify a case *directly* on point in order to make such a showing, he or she must point to authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022) (emphasis in original; internal quotations omitted). In the summary judgment analysis, "'drawing inferences in favor of the nonmovant "is especially important when determining whether there is clearly established law." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021); *quoting Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

### 2. Clearly established case law

Nearly 40 years ago, in *Grandstaff v. Boger*, this Court affirmed the denial of a claim of qualified immunity by officers who "poured their gunfire" into a truck, recklessly killing an innocent person. 767 F.2d 161 (5th Cir. 1985). In reaching that conclusion, this Court relied on Supreme Court precedent to hold that constitutional rights are violated when "officers in *conscious disregard* of substantial risk of harm to innocent parties, kill an innocent third party." *Id*. at 167 (emphasis in original); *citing Garner v. Tennessee,* 471 U.S. 1 (1985). Thus, the constitutional right that Officer Aguirre is alleged to have violated was clearly established by Fifth Circuit precedent for some 35 years prior to this incident

when Aguirre poured rifle fire into a target standing in front of an apartment wherein he knew innocent hostages were present and moving about.

### 3. Statutory law of which Officer Aguirre was actually aware

As recognized by the *Grandstaff* court, the right of an innocent person not to be killed by another recklessly using deadly force intended for another is embodied in Texas law by Penal Code § 9.05,[4] which denies defensive justifications (such as self-defense and defense of others) to actors (including law enforcement officers) who recklessly kill or injure innocent persons. 767 F.2d at 167.[5]   Officer Aguirre testified that he was actually aware of Penal Code § 9.05 and was provided with the statute in the course of his police training. (ROA.1653- Ex. 7 at 97-98)  That statute provides:

> RECKLESS INJURY OF INNOCENT THIRD PERSON.
>
> Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

Tex. Penal Code § 9.05.

Under Texas law, a person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tex. Penal Code § 6.03.  As discussed above, the evidence shows that Officer Aguirre was aware of the presence of hostages in the apartment behind his line of fire and had witnessed Neida

---

[5] *See also Lytle v. Bexar Cnty Tex.* 560 F.3d 404 (5th Cir. 2009) (sheriff's deputy who fired at the vehicle of a fleeing suspect and unintentionally killed the suspect's 15-year-old daughter denied qualified immunity).

Tijerina appear in the doorway of the apartment.  Additionally, Detective Saiz (SAPD's lead investigator in this matter) testified that, in his professional experience, firing high-velocity rifle rounds into an area at a target in line with an apartment door wherein hostages are known to be present poses a substantial risk and that he believed the Defendant-Officers were aware of that risk.  (ROA.1653-Ex. 4 at 41-42)

The evidence presented creates at least genuine issue of material fact concerning whether Officer Aguirre acted recklessly when he rapidly fired nine rounds of high-velocity, barrier penetrating rifle projectiles in less than two seconds knowing that hostages were present and moving in the apartment behind his target in violation of clearly established law.  Accordingly, the district court improperly ruled that Officer Aguirre was entitled to qualified immunity as a matter of law, and summary judgment on this point must be reversed as to Officer Aguirre.

**APPELLANT'S THIRD POINT OF ERROR:**

**The district court erred in granting summary judgment for Appellee-Officer John Aguiree on Appellant's bystander-injury claims by improperly holding that Aguirre did not exercise excessive force when he shot and killed Neida Tijerina.**

The district court also granted summary judgment as to the bystander claims Appellant brought on behalf of Neida Tijerina's minor children who were present in the apartment when their mother was killed.  (ROA.1782)  In its summary judgment order, the district court seems to have confused the Appellant's claim of bystander-victim injuries for bystander-officer liability allegations.  (ROA.1782)  Appellant's bystander claims are

actually based on the mental anguish suffered by the children as a result of their proximity to the death of their mother when she was killed by police.  (ROA.118)  *See Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986) (Four-year-old bystander plaintiff made the "proof of personal loss required for a constitutional claim" where she witnessed her father stagger into their trailer home after being shot by deputies and one of the deputies shot into the trailer).

Regardless, the district court's ruling on this issue turned on its previous conclusion that the Appellee-Officers did not exercise excessive force resulting in a constitutional violation.  (ROA.1782)  For the reasons discussed at length above and incorporated here, Appellee-Officer Aguirre did commit a constitutional violation by applying unreasonable force excessive to the need which resulted in Neida's death.  Accordingly, the court below erred in granting summary judgment as to Appellant's bystander-injury claim, and this ruling should be reversed and remanded to the district court for further consideration.

**APPELLANT'S FOURTH POINT OF ERROR:**

**The district court erred in granting summary judgment for the City of San Antonio by improperly holding that Appellee-Officer John Aguiree did not exercise excessive force when he shot and killed Neida Tijerina.**

Finally, the district court granted summary judgment for the City of San Antonio on all of Appellant's existing claims against the City.  (ROA.1786)  This ruling also turned on the district court's previous conclusion that the Appellee-Officers did not exercise excessive force resulting in a constitutional violation.  For the reasons discussed at length

32

above and incorporated here, Appellee-Officer Aguirre did commit a constitutional violation by applying unreasonable force excessive to the need which resulted in Neida's death. Accordingly, the court below erred in granting summary judgment as to Appellant's *Monell* and bystander-victim injury claims against the City, and this point should be reversed and remanded to the district court for further consideration of the City's summary judgment claims.

## CONCLUSION & PRAYER

Appellant, Maria Tijerina, respectfully asks this Court to reverse the district court's order of summary judgment concerning Appellee-Officer John Aguirre and the City of San Antonio and remand this case to allow for a just resolution on the merits.

Respectfully submitted,

*/s/ Patrick Ballantyne*

**PATRICK BALLANTYNE**
Texas Bar No. 24053759
**LaHood Norton Law Group**
16500 San Pedro Ave., Ste. 300
San Antonio, Texas 78232
210·797·7700
patrick@lahoodnorton.com

**COUNSEL FOR APPELLANT**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing has been served upon the parties registered with the Clerk's Office electronic noticing facilities as listed on the Master Service list, by email, on this 30th day of December 2025.


      */s/ Patrick Ballantyne*
**PATRICK BALLANTYNE**

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1, this document contains 5,257 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. AP. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word365 (2025) in a 14-point Times New Roman font.

  */s/ Patrick Ballantyne*
**PATRICK BALLANTYNE**